UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS O'NEIL FRANKS,

                    Petitioner,

                                        Case Number: 04-10150
v.                                      Honorable David M. Lawson

SHERRY L. BURT,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Douglas O'Neil Franks, a state prisoner presently confined at Mound Correctional Facility in Detroit, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is in custody in violation of his constitutional rights. The petitioner's present custodian is Raymond Booker, but when he filed his petition he was confined at the Southern Michigan Correctional Facility (JMF) in Jackson, Michigan, and his custodian at that time was respondent Sherry L. Burt.

The petitioner was convicted of four counts of first-degree criminal sexual conduct (CSC I), Mich. Comp. Law § 750.520b(1)(a), and one count of second-degree criminal sexual conduct (CSC II), Mich. Comp. Law § 750.520c(1)(a), on April 6, 2000 following a jury trial in the Grand Traverse County, Michigan circuit court. He was sentenced on April 28, 2000 to concurrent prison terms of life and sixty to ninety years for the CSC I convictions and ten to fifteen years for the CSC II conviction. The petitioner raises claims of ineffective assistance of counsel, prosecutorial misconduct, improper introduction of rebuttal evidence by the State, and the constitutional invalidity of his sentence. The respondent has filed an answer to the petition asserting that the claims are

either procedurally defaulted, fail to state a federal constitutional claim, or otherwise lack merit. The Court finds that the state appellate court's decision in this case was not contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court. The petition therefore will be denied.

I.

The convictions in this case arise from the petitioner's alleged sexual abuse of his children between the years of 1986 and 1992. The Michigan Court of Appeals described the trial proceedings as follows:

> The children, who testified as young adults, stated that defendant was verbally and physically abusive and forced them to engage in sexual acts, including penile-vaginal intercourse, fellatio, and genital manipulation. Defendant was alternately generous with gifts and physically and verbally abusive, and repeatedly threatened to kill the children or their mother if they reported his actions.
>
> Barbara Cross, a clinical social worker, testified as an expert witness in the field of child sexual abuse syndrome. She testified that delayed disclosure is common in sexual abuse cases involving children, that children could be silenced by threats or coercion, and that it is not unusual for children to visit a person who has abused them because children would retain a loyalty to the person and would not want the abuse to be disclosed. On cross-examination, Cross stated that it was possible that a child could fabricate an allegation of sexual abuse as a response to years of physical abuse.
>
> Detective Richard Robbins testified that he interviewed defendant, who initially denied the children's allegations but then stated that he might have touched the children when he was under the influence of drugs or alcohol. Robbins stated that he arranged a second interview with defendant, but defendant later telephoned and said he could not appear due to a death in the family.
>
> Defendant testified on his own behalf. He stated that he got along very well with his children. He acknowledged that he disciplined his children, but denied ever striking them or verbally abusing them. Defendant denied engaging in any sexual activity whatsoever with the children and denied threatening to hurt or kill them. He stated that he told Robbins that he could not appear for the second interview because he had been informed by Marilyn Franks of a death in the family. That information turned out to be erroneous.

Richard Robbins testified on rebuttal that when he telephoned to find out why defendant did not appear for the second interview, defendant told him that he went out of town for a family funeral. Robbins stated that after he heard defendant's testimony he used the Law Enforcement Information Network (LEIN) to attempt to locate Marilyn Franks, but was unsuccessful. He acknowledged that, under certain circumstances, a name would not appear on a LEIN search.

During closing argument, the prosecutor emphasized that although the children delayed reporting the abuse perpetrated by defendant, they eventually came forward voluntarily. The prosecutor stated that the children placed their trust in the jurors and that it was time for defendant to be told that he was guilty.

Defense counsel argued that the prosecutor was relying on emotion, and urged the jurors to see defendant's children as the young adults they were and not as the small children depicted in the photographs introduced into evidence. Counsel emphasized that defendant denied each and every allegation and theorized that the children alleged that defendant abused them in order to curry favor with their mother or to please their interviewers.

In rebuttal closing argument, the prosecutor argued that defendant was not a credible witness. He noted that defendant stated that he did not keep a firearm under his bed; however, two of the children testified that a firearm was located under the bed. Although defendant testified that a woman named Marilyn Franks telephoned and told him in error that his cousin had been killed, the prosecutor emphasized that no such person could be located. The prosecutor further argued that, at this point, the children had no reason to fabricate accusations because they were no longer under defendant's control.

*People v. Franks,* 2002 WL 31953887, *1-2 (Mich. App. Dec. 13, 2002).

Following his conviction and sentencing, the petitioner filed a direct appeal in the Michigan Court of Appeals raising the four issues he presents in his habeas petition in this Court. The court of appeals affirmed the petitioner's convictions on December 13, 2002. *People v. Franks*, 2002 WL 31953887 (Mich. App. Dec. 13, 2002). The petitioner then filed a delayed application for leave to appeal in the Michigan Supreme Court raising the same four issues, and the state supreme court denied leave to appeal in a standard order. *People v. Franks*, 468 Mich. 940, 664 N.W.2d 218 (June 30, 2003) (Table).

The petitioner thereafter filed his federal petition for writ of habeas corpus asserting the same four claims:

I.  PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

II.  PROSECUTORIAL MISCONDUCT DENIED PETITIONER A FAIR TRIAL.

III.  PETITIONER WAS DENIED A FAIR TRIAL WHEN THE PROSECUTOR IMPROPERLY INTRODUCED EXTRINSIC EVIDENCE AND REBUTTAL TESTIMONY.

IV.  PETITIONER'S SENTENCING PROCEEDINGS WERE TAINTED BY REVERSIBLE ERROR.

The respondent has filed an answer to the petition asserting that the claims are either procedurally defaulted, fail to state a federal constitutional claim, or lack merit.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, which govern this case, "circumscribe" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

-4-

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court

defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask
> whether the state court's application of clearly established federal law was
> objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect*
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that court
> concludes in its independent judgment that the relevant state-court decision applied
> clearly established federal law erroneously or incorrectly. Rather, that application
> must also be unreasonable.

*Id.* at 409, 410-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*,

475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison*

*v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003)

(en banc).

A.

The petitioner asserts that he received ineffective assistance of trial counsel because his

attorney failed to offer a qualified expert witness in the area of repressed sexual abuse revealed

during adult therapy; object to references to extraneous matters, including a restraining order that

had been entered against the petitioner, the requirement that the petitioner's visitation with his

children be supervised, and the petitioner's alcohol and drug problems; prevent repeated references

to the petitioner's failure to appear for a second interview with Detective Robbins; move to exclude

a self-serving statement made by one of the children to her mother regarding abuse; and object to

improper and irrelevant rebuttal testimony from Orla Frost and Detective Robbins

The Supreme Court has "emphasized that the Sixth Amendment right to counsel exists 'in

order to protect the fundamental right to a fair trial.'" *Lockhart v. Fretwell*, 506 U.S. 364, 368

(1993) (quoting *Strickland v. Washington*, 466 U.S. 668, 684 (1984)).  "In *Strickland*, [the Court] identified the two components to any ineffective-assistance claim: (1) deficient performance and (2) prejudice."  *Id.* at 368.  *See also Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687.  The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Strickland*, 466 U.S. at 687.

The Michigan Court of Appeals reviewed and rejected each of the petitioner's ineffective assistance of counsel claims, writing as follows:

> Counsel and defendant made the decision to forego calling an expert witness and to rely on counsel's cross-examination of the prosecution's witness, Barbara Cross. The failure to call a witness or to present other evidence constitutes ineffective assistance only when it deprives the defendant of a substantial defense. *People v. Hyland,* 212 Mich. App. 701, 710; 538 N.W.2d 465 (1995), mod. on other grounds 453 Mich. 902 (1996). A substantial defense is one that might have made a difference in the outcome of a trial. *In re Ayres*, 239 Mich. App. 8, 22; 608 N.W.2d 132 (1999). Defendant's theory was that the children's accusations were not true and that the children were either relating false memories or were leveling false charges to please their mother. On cross-examination, Cross acknowledged that some persons have false memories of sexual abuse and that some charges are leveled for ulterior motives. Defendant presented his theory through the cross-examination of Cross. He was not deprived of a substantial defense because he did not call an expert witness.
>
> In addition, defendant's assertion that counsel was ineffective by failing to object to certain evidence is without merit. Counsel's decision to refrain from objecting to questions regarding issues such as the restraining order entered against defendant, defendant's use of drugs and alcohol, and a self-serving statement made by one of the children was consistent with the defense theory that the abuse charges were fabricated by defendant's former wife. We do not substitute our judgment for that of counsel regarding matters of trial strategy. *People v. Rice (On Remand),* 235 Mich. App. 429, 445; 597 N.W.2d 843 (1999). Finally, the rebuttal evidence offered by the prosecution was proper. Counsel was not required to advocate a meritless position by objecting to that evidence. *People v. Snider,* 239 Mich. App. 393, 425; 608 N.W.2d 502 (2000).

*People v. Franks,* 2002 WL 31953887 at *3.

This Court finds that the state appellate court reasonably applied Supreme Court precedent when it determined that the petitioner did not suffer ineffective assistance of counsel as a result of trial counsel's decisions. The record discloses that counsel's decision not to call an expert witness who could bolster the theory that the children had fabricated the abuse was a strategic choice with which the petitioner concurred on the record. Defense counsel had retained an expert, Dr. Barbara

Jones-Smith, but counsel then determined, along with the petitioner, that it would be risky to call

her.  The transcript reads:

> THE COURT: . . .  Over the recess it's my understanding that Ms. Smith has not been contacted, rather, the Defense Counsel has been speaking with the Defendant regarding a strategic decision regarding using this witness, whether or not she can withstand the attack on her credentials and issues associated with that.  Mr. Hall [defense counsel], you said you would like to cover that on the record?

> MR. HALL: Yes, your Honor. . . .  Mr. Franks and I discussed the issue . . . regarding making the decision whether to attempt to bring in Doctor Barbara Jones-Smith and suffer the attack on her credentials or simply to rest our case and work off of the information that we have and the cross-examination of Barbara Cross [the prosecution's expert witness].  We made a judgment decision – I understand my client concurs in it – where we simply intend to rest our case, and if the Court would like to ask Mr. Franks any questions about his knowledge of the decision and involvement, we'll be appreciative.

> THE COURT: All right. . . . I certainly, on something as important as this, want to first make certain you felt Mr. Hall was able to answer all of your questions.

> THE DEFENDANT: Yes, he has.

> THE COURT: And have you had sufficient time to digest both his answers and his advice?

> THE DEFENDANT: Yes, I have.

> THE COURT: And is this a decision that you believe you can make an intelligent concurrence in at this point, you can go along with it?

> THE DEFENDANT: Yes, sir.

Trial Tr., April 5, 2000 at 512-13.  This exchange shows that counsel made a reasoned decision not

to call an expert witness, weighing the benefit of expert testimony against the risk of impeachment

and his ability to elicit favorable testimony on cross-examination.  This is the sort of strategic

maneuver that courts are loathe to second-guess, *see Haliym v. Mitchell*, 492 F.3d 680, 711 (6th Cir.

2007), and this is particularly so when the defendant was involved in the decision-making process

and agreed with the ultimate choice. Although certain aspects of counsel's performance may be questioned (e.g., why he was unable to obtain a witness less susceptible to impeachment), the Court must "apply[] a heavy measure of deference to counsel's judgment[]." *Strickland*, 466 U.S. at 691. On this score, the petitioner's claim for ineffective assistance must fail.

The Court reaches a similar conclusion with respect to the petitioner's claim concerning reference to the restraining order, the condition imposed on the petitioner's visitation rights, and the petitioner's struggles with drugs and alcohol. The petitioner complains that his counsel bolstered the prosecution's case during cross-examination by eliciting testimony from witnesses that brought out these facts. In context, however, it is apparent that counsel was simply establishing background facts. Further, to the extent counsel was attempting to highlight these facts, this endeavor could be viewed as a permissible strategic choice because the circumstances were consistent with important parts of counsel's overall theory – that the petitioner's wife had a grudge against the petitioner and encouraged her children to fabricate or embellish their tales of abuse; that the claims of abuse were undermined by the petitioner's restricted access to the children; and that the petitioner's wife was negligent in her oversight. *See* Trial Tr., April 5, 2000 at 335-42.

In any event, it is clear that the petitioner cannot show prejudice. The children gave powerful testimony of a long-running saga of sexual abuse, one that began when they were very young and worsened as they aged, including coercion at gunpoint. There is no reason to think that the jury would have radically changed its opinion of the petitioner had counsel not elicited the brief statements regarding the petitioner's alcohol and drug problems and legal restrictions. Counsel's mistakes, if he made any, are not "sufficient to undermine confidence in the outcome." *Strickland*,

466 U.S. at 694. Therefore, the state appellate court's decision was not contrary to or an unreasonable application of *Strickland v. Washington*.

A similar fate befalls the petitioner's claim that trial counsel failed to prevent damaging references to the fact that the petitioner did not appear for a follow-up interview with Detective Robbins. The prosecutor initially asked Detective Robbins whether he attempted to interview the petitioner a second time. Robbins stated that he tried to, but the petitioner told him he could not attend due to a death in the family. When the prosecutor asked whether Robbins was able to confirm that a death had actually occurred, the petitioner's counsel objected to the question on relevancy grounds. The judge instructed the prosecutor that he would need to lay further foundation to overcome hearsay and personal knowledge concerns, although he did not sustain the petitioner's relevancy objection on the rationale that it was a proper matter for impeachment. Through subsequent hearsay objections, counsel was able to prevent the prosecutor from eliciting testimony that the death excuse was a lie. During cross-examination of the petitioner, however, the prosecutor revisited the question of the death and elicited testimony that the petitioner did not attend the funeral. Yet it was reasonable for the petitioner's counsel to stand silent during this exchange, as the jury was surely wondering why the petitioner had avoided the second interview and whether the story of the death was legitimate. In context, the exchange was not that unfavorable to the petitioner, as the prosecutor was not able to establish that he actually lied to Detective Robbins. The exchange between the defendant and the prosecutor was as follows:

> Q.  Do you remember when you were invited by Detective Robins to go speak
>     with him again?
> A.  Yes.
> Q.  And you told him that a family member had died?
> A.  Yes, I remember that.
> Q.  Who was the family member?

| A. | It was supposed to have been a family member, Mark. |
|---|---|
| Q. | What's Mark's last name? |
| A. | Franks. |
| Q. | And where was Mark living? |
| A. | Fenton – Lake Fenton. |
| Q. | And you were down there for that funeral? |
| A. | No, I did not go down there. |
| Q. | Oh, so you lied to Detective Robbins. |
| A. | No, I did not lie to Detective Robbins. |
| Q. | You misled Detective Robbins. |
| A. | No, I did not.  I had gotten a phonecall [sic] from a hysterical woman saying that she had – that Mark had died – |
| Q. | Okay, – |
| A. | – in an automobile accident. |
| Q. | – and you called and told Detective Robbins you couldn't come back for the interview because of that, but you didn't go down to the funeral. |
| A. | No, because the woman had – |
| Q. | Sir, yes or no.  You didn't go down for the funeral. |
| A. | No, I did not. |

Trial Tr., April 5, 2000 at 457-58.  Once the issue had been brought up in front of the jury, it was not unreasonable to allow the petitioner to counter the insinuation of guilty conduct as best he could. And again, even if the petitioner could meet the performance prong (which he cannot; it is not even clear what objection he could have raised), the petitioner is unable to establish prejudice flowing from this alleged deficiency.

The Court also must reject the petitioner's contention that his trial attorney was constitutionally ineffective when he refrained from moving to exclude a statement made by one of the children, Christal, to her mother regarding abuse.  Christal testified at length, describing how the petitioner penetrated her with a novelty back-scratcher, and later how he forced her to perform oral sex while pointing a rifle at her temple.  The next day, Christal's mother testified.  Among other things, the prosecutor elicited testimony showing that she was unaware Christal had been molested until much later, and she was absolutely shocked by the news.  The transcript reads in relevant part:

| Q. | Okay.  Did there come a point in time when you were sitting down with Christal and she disclosed something to you? |
| A. | Yes. |
| Q. | How did that come about? |
| A. | It was March of '96 – I think the beginning of March – and we were sitting at the kitchen table and there was something that had happened in the family and we were just talking and she said, "look at how good I turned out, with everything that happened to me," and I said "what do you mean by that," you know, and she just said, "because that happened to me, look at how good I turned out still, you know, I did good, you know, I made it through this," and – |
| Q. | Were you shocked? |
| A. | Yes. |
| Q. | Floored? |
| A. | Yup.  I was very, very upset and very angry and I wanted to go right over there.  I wanted to call the police, I wanted to do so many things. |

Trial Tr., April 5, 2000 at 331-32.  Although defense counsel could have objected to this line of questioning on hearsay grounds, it is not clear what good this would have done.  The jury had already heard Christal tell a long and detailed story of sexual abuse; the harm caused by her mother's disclosure of how she learned of this saga was minimal.  Therefore, even if the Court assumes that counsel performed ineffectively by failing to object, the petitioner cannot show prejudice – i.e., that he was "deprive[d] . . . of a fair trial, a trial whose result is reliable."  *Strickland*, 466 US. at 687.

The petitioner's final claim for ineffective assistance of counsel – based on counsel's failure to object to improper and irrelevant rebuttal testimony from Orla Frost and Detective Robbins – lacks merit as well.  The petitioner complains that counsel allowed Frost to testify to hearsay statements.  Frost stated that she overheard a phone conversation between Joni Franks and Erica Franks.  Frost did not describe the contents of the conversation, but she stated that Erica was in her presence, and she knew Joni was on the other end because Erica told her so and Frost recognized Joni's voice.  Although counsel could have objected for want of personal knowledge, it seems unlikely that the court would have sustained this objection since Frost stated she recognized Joni's

voice.  Moreover, because Frost did not describe the contents of the conversation, it matters little that "Frost did not actually talk on the phone to Joni."  Pet.'s Br. in Supp. at 11.  Again, the Court is convinced that any error on counsel's part was not so egregious that, had it not occurred, "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

As for Detective Robbins, the petitioner asserts error based on counsel's failure to object to impeachment on a collateral matter by extrinsic evidence.  Michigan Rule of Evidence 608(b) "generally prohibits impeachment of a witness by extrinsic evidence regarding collateral, irrelevant, or immaterial matters."  *People v. Spanke,* 254 Mich. App 642, 644, 658 N.W.2d 504, 507 (2003).  However, like all rules, Rule 608(b) contains an important exception: "a party may introduce rebuttal evidence to contradict the answers elicited from a witness on cross-examination regarding matters germane to the issue if the rebuttal evidence is narrowly focused on refuting the witness' statements."  *Spanke*, 254 Mich. at 644, 658 N.W.2d at 507.  Extrinsic evidence is "[e]vidence that is calculated to impeach a witness's credibility, adduced by means other than cross-examination of the witness."  Black's Law Dictionary (8th ed).  There is little question in the present case that extrinsic evidence (in the form of testimony by Detective Robbins) was used to impeach the petitioner on a collateral matter.  After the petitioner testified on cross-examination that he did not lie when he told Detective Robbins that he could not attend the second interview due to a death in the family, the prosecutor called Robbins to the stand.  The following colloquy ensued:

> Q.      What we need to focus in on, Detective, is the second interview that you had
>         with the Defendant or didn't have with the Defendant.
> A.      Okay.
> Q.      Okay?  Did you speak to him on Monday, March 22nd, 1999?
> A.      Yes, I did.
> Q.      What, if anything, did he tell you?
> A.      I called him at his workplace and he told me that he went to Ann Arbor for
>         his cousin's funeral.

Q.    He told you he actually went there.
A.    Yes.

Trial Tr., April 5, 2000 at 523.  Other evidence established that there was no funeral, and in fact no

death.  Although the re-direct examination of Robbins fell within the strictures of Rule 608(b) and

should not have been allowed, it is difficult to see how the failure of defense counsel to object

resulted in prejudice to the petitioner, who already had testified on cross-examination that he did not

attend the funeral as he represented he had to the detective.  Moreover, it would not have been an

unreasonable strategic choice for defense counsel to refrain from objecting further and drawing the

jury's attention to an otherwise peripheral matter.  Of course, even if counsel's failure to object

could somehow be considered outside the wide range of  "reasonableness under prevailing

professional norms," *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (internal quotes

omitted), the petitioner would still have to establish prejudice.  This he cannot do.  There was strong

evidence that the petitioner fabricated the death prior to Robbins's rebuttal testimony and, more

importantly, the substantive evidence of guilt was overwhelming.  Habeas relief is not appropriate

on this final claim of ineffective assistance.

## B.

The petitioner next claims that the prosecutor committed several acts of misconduct that

resulted in a violation of his right to a fair trial.  He says that by asking improper questions that were

designed to introduce evidence effectively portraying the petitioner as a bad person; by gratuitously

displaying photographs of the children when they were very young; by improperly arguing that the

jury had a civic duty to convict the petitioner because the children had placed their trust in the jury;

and by suggesting to the jury that they should rely on his personal knowledge that the petitioner had

lied, the prosecutor denied him a fair trial.   The respondent argues that the state court's

determination that the petitioner violated the state procedural rules – thereby forestalling consideration of the merits of his federal constitutional claims – constitutes an independent and adequate ground under state law that this Court may not overturn. This procedural default occurred, the respondent insists, because the petitioner did not interpose a contemporaneous objection to the prosecutor's conduct at trial, and the state courts relied upon a clearly established state procedural rule in denying his claims.

In this case, the last state court to issue a reasoned opinion addressing this claim stated as follows:

> Defendant did not object to the prosecutor's alleged improper conduct. Absent an objection, reversal is warranted only if plain error occurred that resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. *People v. Carines,* 460 Mich. 750, 763-764; 597 N.W.2d 130 (1999)

*People v. Franks,* 2002 WL 31296652 at *4.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *ibid.*, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection or file a motion for a directed verdict, *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199,

202-03 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F.3d at 162; *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Abela v. Martin*, 380 F.3d 915, 922-24 (6th Cir. 2004); *Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

-17-

In this case, it appears that a state procedural rule was in place during the relevant time, namely that a defendant must object at trial to preserve issues for appellate review. The contemporaneous objection rule was firmly established at the time of the petitioner's trial. *See People v. Carines*, 460 Mich. 750, 761-64, 597 N.W.2d 130, 137-38 (1999); *People v. Grant*, 445 Mich. 535, 546, 520 N.W.2d 123, 128 (1994). Therefore, the contemporaneous objection rule is an adequate and independent state ground upon which to deny relief.

It also appears that the Michigan courts actually enforced the procedural rule in this case. The last state court to issue a reasoned opinion on these claims, the Michigan Court of Appeals, held that the claim of prosecutorial misconduct was not preserved because the petitioner "did not object to the prosecutor's alleged improper conduct." *People v. Franks,* 2002 WL 31296652 at *4. The court then reviewed the unpreserved claim for plain error, concluding that the petitioner was not prejudiced by questioning that may have elicited impermissible evidence of prior bad acts (e.g., that he had problems with drugs and alcohol); that the prosecutor did not improperly display photographs of the victims when they were young, as it was appropriate to distinguish their ages at the time of the crime from their ages at the time of trial; that while the prosecutor did make an improper civic-duty argument, its harm was mitigated by an instruction and it did not affect the petitioner's substantial rights; and that the prosecutor did not improperly suggest that the jury rely on his superior personal knowledge. Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

On the other hand, although the procedural default doctrine precludes habeas relief on a defaulted claim absent satisfaction of the cause-and-prejudice test, the doctrine is not jurisdictional. *Trest v. Cain,* 522 U.S. 87, 89 (1997); *Howard v. Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005).

Therefore, although the Court would ordinarily resolve the procedural default issue first, "judicial economy sometimes dictates reaching the merits of [of a claim] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir. 1999)(internal citations omitted); *see also Lambrix v. Singletary,* 520 U.S. 518, 524-25 (1997); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). The Court deems it more efficient in this case to proceed directly to the merits of the petitioner's claims.

As detailed above, the petitioner contends that the prosecutor impugned his character, inflamed the jury with photographs, made an improper civic-duty argument, and vouched for certain witnesses.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for a new trial and habeas relief only if the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997)). The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the court must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. Flagrancy depends on four factors: (1) whether the actions "tended to mislead the

jury or prejudice the defendant"; (2) whether the actions were isolated or represent a pervasive course of conduct; (3) whether the acts represent a deliberate attempt to affect the outcome of the case; and (4) the overall strength of the case. *Millender*, 376 F.3d at 528.

The first question to consider is whether the prosecutor's questioning of the petitioner at trial was designed to attack the character of the petitioner and place him in a bad light in front of the jury (separate and apart from his possible guilt of the crimes charged). The Court finds that the petitioner has not shown that conduct to be improper because the record reflects that the petitioner put his character in issue during his direct examination. The petitioner's testimony about what a loving father and husband he was, how involved he was in his family's lives, and based upon that how he could never sexually abuse his children, "opened the door" for the prosecutor to ask questions in an effort to dispute the petitioner's version of the state of affairs in his home. *See United States v. Roper*, 133 F.3d 430, 434 (6th Cir. 1998). "The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him." *Ibid.* (quoting *Michelson v. United States,* 335 U.S. 469, 479 (1948)).

The petitioner also asserts that the prosecutor accused him of being untruthful during his direct examination. It is not misconduct *per se* to refer to testimony as a lie. *United States v. Nernandez-Muiz*, 170 F.3d 1007, 1012 (10th Cir. 1999). Moreover, the prosecution may imply or state that a defendant or defense witnesses are lying as long as the prosecutor emphasizes discrepancies between the defendant's testimony and the record. *United States v. Owens*, 426 F.3d 800, 806 (6th Cir. 2005). When that is the case, the prosecutor is not suggesting that the jury should find the defendant incredible because the prosecutor personally believes he is lying, but rather is

highlighting evidentiary inconsistencies that on their own bespeak dishonesty. *See ibid.* (explaining that a prosecutor "may argue for a reasonable inference that a witness is not credible . . . assuming there exists evidence from which to so infer"). That is precisely what the prosecutor in this case did during his cross- and re-cross-examination of the petitioner (i.e., use the petitioner's testimony as a basis upon which to raise discrepancies and inconsistencies), *see* Trial Tr., April 5, 2000 at 452-61, 468-71, and therefore he cannot be charged with prosecutorial misconduct.

Next, the petitioner argues that it was inflammatory for the prosecutor to show pictures of his children to the jury as "children," since they were young adults at the time of trial. The Court disagrees. It was not improper for the prosecutor to show the jury what the children looked like during the time period in which the alleged abuse took place. *See Pearl v. Cason*, 219 F. Supp. 2d 820, 830 (E.D. Mich. 2002) (it was not error for the prosecutor to show the jury relevant photographs to provide "a more accurate depiction of the victim"). The Sixth Circuit has expressed reluctance to find constitutional error in the admission of gruesome or provocative photographs as the admission of such evidence usually fails to raise "'the spectre of fundamental fairness such as to violate federal due process of law.'" *See Cooey v. Coyle*, 289 F.3d 882, 894 (6th Cir. 2002) (quoting *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997)). Moreover, the photographs in this case were relevant as they related to evidence presented at trial. The testimony of Barbara Cross, the prosecution's expert witness, centered around her knowledge and expertise relative to the sexual abuse and rape of children. It was not unreasonable for the prosecutor to remind the jury that the victims of the alleged sexual assaults in this case were children, even though they were young adults at the time of their testimony.

The petitioner also maintains that the prosecutor made an improper civic-duty argument by arguing to the jury during closing argument that the children were placing their trust in the jury to convict the petitioner. The prosecutor's words were compelling:

> Ladies and gentlemen, the time has come after all of these years to say something. It's something that cries out to say, it is something that you as a collective body can say: Douglas Franks, you raped your children, you stole their childhood, you stole their innocence and now you must be found responsible.
>
> There they are folks. Thank God they are alive. They put their trust in you and today – today trust is a six-letter word and that six-letter word is guilty and I ask that you return a verdict of guilty on all . . . five counts.

Trial Tr., April 6, 2000 at 540.

Generally, a prosecutor cannot make statements "calculated to incite the passions and prejudices of the jurors." *United States v. Solivan,* 937 F.2d 1146, 1151 (6th Cir. 1991). In this case, the Michigan Court of Appeals concluded that the prosecutor made an improper civic-duty argument, writing:

> The prosecutor did make an improper civic duty argument when he stated that the jury should convict defendant because the children had placed their trust in the jurors. However, the prejudicial effect of this remark could have been cured by a timely instruction that the prosecutor's argument was not evidence, *Launsburry, supra,* an instruction that was ultimately given in any event by the trial court following closing arguments. Defendant's substantial rights were not affected.

*People v. Franks,* 2002 WL 31296652 at *5.

After reviewing the above-quoted closing argument, this Court agrees that the remarks were improper and any prejudicial effect was cured by the following jury instruction, delivered shortly after the prosecutor's remarks:

> The lawyers' statements and arguments are not evidence. [T]hey are only meant to help you understand the views of each side and each side's legal theories. The lawyers' questions to the witnesses were also not evidence and you should consider those questions only as they gave meaning to the witnesses' answers. You should

> only accept things the lawyers say that are actually supported by the evidence or by
> your own common sense and general knowledge.

Trial Tr., April 6, 2000 at 564-65. Although the Court believes that the prosecutor's words were ill-considered because they could be viewed as arguing that the jury should convict to avoid disappointing the children, the Court finds that the prosecutor's conduct, when considered in light of the instruction, did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (1986) (internal quotation marks omitted).

Next, the remarks that the petitioner believes amount to vouching or showing superior personal knowledge of the facts are as follows:

> Ask yourselves, when you listen to the Judge's instructions, how did the witness appear to testify. Did he try to make some concerted effort to answer truthfully? Something about the way he testified make you believe he wasn't telling te truth? We know that he lied, we know that he lied to you about Marilyn Franks. We know that he lied to Rick Robbins when he said that he went down to the funeral in Ann Arbor. We know he has a pattern of lying and who has the most to lose so he might as well lie? The Defendant.

Trial Tr., April 6, 2000 at 561-62.

"Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993). Improper vouching also occurs when the prosecutor argues evidence not in the record, *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992), or when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness's testimony, thereby placing any perceived prestige of the office of the prosecutor behind the witness, *see United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999). Generally, improper vouching involves either blunt comments, *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992), or comments that imply that the prosecutor has special knowledge of facts not presented to the jury or of the

credibility and truthfulness of witnesses and their testimony, *United States v. Carroll*, 26 F.3d 1380, 1388 (6th Cir. 1994).

The prosecutor's assertions that "we know" certain things could suggest to the jury that the state officials might have more information than was presented at trial. On the other hand, they could be viewed as an awkward and amateurish attempt to discuss knowledge shared by the advocate and the jury members themselves based on the trial evidence. This sort of construction ought to be avoided. But in the context of this case, it did not cause a constitutional violation. The prosecutor's argument can be tied to reasonable inferences from the record. It is well settled that a prosecutor has leeway to argue reasonable inferences from the evidence. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). A prosecutor may also argue from the facts that a witness is or is not worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). The Court is satisfied that the prosecutor did not intend to make improper comments, and his use of the word "we" amounted to no more than an emphasis that he drew his inferences from the same evidence presented to the jury. In any event, even if the prosecutor did demonstrate superior knowledge relative to this matter, the remarks were not so flagrant as to render the trial fundamentally unfair, and the above-stated jury instruction would have further alleviated any prejudicial effect.

## C.

The petitioner's third claim for habeas relief is based on prosecutorial misconduct plus trial court error. The petitioner argues that the trial court erred when it admitted certain rebuttal evidence (and that defense counsel erred in failing to object), and the prosecutor engaged in misconduct by (1) introducing evidence on a collateral matter regarding the petitioner's alleged lack of cooperation in the police investigation of this matter, and (2) denigrating defense counsel. Federal habeas review

is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire,* 502 U.S. 62, 68 (1991). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004). In determining whether an alleged trial error violated the constitution, the court must evaluate "whether the error had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted). In short, the petitioner must establish "actual prejudice " to warrant habeas relief. *Ibid.*

Here, the Court concurs with the assessment of the Michigan Court of Appeals. The rebuttal testimony did not deny the petitioner a fundamentally fair trial. The petitioner chose to testify in his own defense. He introduced evidence of the alleged "collateral matter" by providing the trial court with his explanation as to why he failed to submit to a second scheduled interview with Detective Robbins. Accordingly, the prosecutor was free to rebut this testimony if he could through Detective Robbins's testimony.

The petitioner's denigration-of-counsel argument apparently is based on the following comment made during closing argument by the prosecutor:

> Many years ago in law school they had a professor who told us if you don't have the facts, argue the law, and if you don't have the law on your side, argue the facts, and if you don't have either, attack the police officers, but that's not what the Defendant is doing today. You know, he's not attacking the police officer, he's trying to shift this entire case to that poor lady right there, Mrs. Frost, why would she allow this to happen? That's wrong folks. That's not her responsibility, that's his responsibility. That's his.

Trial Tr., April 6, 2000 at 553-54. Although prosecutors may not "make unfounded and inflammatory attacks on the opposing advocate," *United States v. Young,* 470 U.S. 1, 9 (1985), the comments in dispute here occurred during the prosecutor's closing rebuttal argument and were directed at the substance of the defense argument itself. Prosecutors ordinarily are "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel," *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982), as well as to the defense's trial strategy, *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). The Court does not find that the prosecutor's remarks were inappropriate or exceeded the bounds of fair advocacy. In addition, the jury was instructed, as set forth above, that the attorney's arguments were not evidence. The prosecutor's closing argument did not abridge the petitioner's right to a fair trial.

D.

In his final claim for habeas relief, the petitioner contends that his sentence is invalid because it is disproportionate, the proper factors were not taken into account, and it was improperly scored.

To the extent that the petitioner challenges the proportionality of his sentence, the argument does not furnish a basis for habeas relief. Michigan law provides that there must exist proportionality between an offense and the sentence. *People v. Milbourn*, 435 Mich. 630, 636, 461 N.W.2d 1, 3 (1990) ("[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."). However, the United States Constitution "contains no strict proportionality guarantee," and therefore, a claim that the sentencing court violated Michigan's principles of proportionality is not a cognizable claim under habeas review. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). It

is now well settled that the Eighth Amendment "does not require strict proportionality between crime and sentence." *Id.* at 1001; *United States v. Layne*, 324 F.3d 464, 473 (6th Cir. 2003). Instead, the Eighth Amendment simply forbids extreme sentences that are "grossly disproportionate" to the crime committed. *Harmelin*, 501 U.S. at 1001. Because the petitioner was convicted of threatening and sexually abusing (vaginally and orally) his three biological children over the course of several years, the sentence he received is in no way "grossly disproportionate" to the crime.

To the extent that the petitioner is challenging the information upon which his sentence was allegedly based, this argument likewise fails to warrant habeas relief. It has long been recognized that when imposing sentence "courts have broad discretion to consider various kinds of information." *United States v. Watts*, 519 U.S. 148, 151 (1997). It is the petitioner's position that the trial court "totally concentrated on the offense and the negatives associated with it in its reasons for imposing the life in prison and 60-90 year sentences," instead of focusing on other factors set forth in the pre-sentence report. Pet.'s Br. in Supp. at 33. However, the trial court judge stated that he "spent a great deal of time going through [the petitioner's] pre-sentence report," which undermines this claim. Sent. Tr., April 28, 2000 at 21. To prevail on a claim that he was sentenced based upon improper information, the petitioner must demonstrate that the disputed information was "materially false" and that the trial court relied on the information. *Collins v. Buchkoe*, 493 F.2d 343, 345-46 (6th Cir.1974). The petitioner does not make such a claim, but rather asserts that the trial court concentrated unduly on certain circumstances. Habeas relief cannot be premised on this allegation.

Finally, the petitioner's assertion that his sentencing guideline score was improperly calculated under Michigan's sentencing scheme raises an issue under state law but not federal law,

which this Court cannot address in a habeas corpus proceeding. *See Estelle*, 502 U.S. at 67-68. Moreover, the petitioner has not demonstrated that his sentencing guideline score was improperly calculated or based upon inaccurate information. The petitioner challenged several of the offense variables during the sentencing proceedings. Simply because the petitioner disagrees with the trial court's ruling does not mean that the state court erred. And even if the state court did miscalculate the guidelines, the petitioner is not entitled to relief from this Court. *See Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) ("Because state courts are the final authority on state law, federal courts must accept a state court's interpretation of its statutes and its rules of practice.") (internal citation omitted). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *Estelle*, 502 U.S. at 67-68. The petitioner has not demonstrated any such injury.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the petitioner is not in custody in violation of the Constitution or the laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dk# 3] is **DENIED**.

s/David M. Lawson                          
DAVID M. LAWSON
United States District Judge

Dated:  March 31, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2008.

s/Felicia M. Moses
FELICIA M. MOSES